Thomas S. Wiltbank, Executor of the last will and testament of Samuel J. Potts, deceased, *v.* George Tobler and Cornelia V. Tobler, Appellant.

*Married women—Promissory notes—Contract of suretyship.*

An instrument which is in itself a contract of suretyship only will not be enforced against a married woman, although she may have had capacity to incur the kind of indebtedness for which the instrument was given.

In an action upon a promissory note against a married woman and her husband, both of whom had signed the note, it appeared that the note in suit had been given in place of several other notes, on two of which the wife's name appeared as indorser, and on the others, her name did not appear at all. It was averred in the statement that the note was given to secure a loan to the wife for the payment of interest, taxes and repairs of her separate real estate. *Held*, (1) that upon its face the note in suit was signed by the wife, as surety for her husband; (2) that the plaintiff was not entitled to recover against the wife, under the Act of June 8, 1893, P. L. 344.

Argued March 29, 1897. Appeal, No. 59, Jan. T., 1897, by defendant, Cornelia V. Tobler, from judgment of C. P. No. 3, Phila. Co., Sept. T., 1894, No. 826, on verdict for plaintiff. Before STERRETT, C. J., GREEN, WILLIAMS, MITCHELL and FELL, JJ. Reversed.

Assumpsit on a promissory note. Before McMICHAEL, J.

The material part of the testimony appears from the charge of the court below.

The facts appear by the opinion of the Supreme Court.

The court charged in part as follows:

In the suit we have before us, Wiltbank, executor, sues George Tobler and Cornelia Tobler on their joint promissory

note. There is no defense as to George Tobler, and as to him, the verdict should be for the plaintiff. [As to the wife, it depends upon your determination of the questions of fact. One fact is, whether the money was loaned to her upon the credit of her personal estate, or loaned to her upon the credit of her separate estate. Unless you can find the fact from the evidence, your verdict should be for the defendant. Now, the testimony as to that is somewhat conflicting. There is on the one side some testimony which I thought was sufficient to go to you; that is, admissions of the defendant herself made to Mr. Wiltbank on certain occasions, and alleged to have been made to other witnesses.] [1] Mr. Wiltbank said that Mrs. Tobler told him that she had used the money in paying taxes, interest and repairs on her property. The witness, Miss Allen, testified that on one occasion she said to her it was for repairs for her property; and the witness, Mrs. Meriam, said that Mrs. Tobler said to her on one occasion that the debt was a just one and should be paid, and that the money went to pay interest and taxes, and that had it not been for Mr. Potts' kindness she would have lost her property. [You will see that the only testimony that it was loaned to her on her credit, or rather loaned to her on the credit of her separate estate is the alleged admissions made to Wiltbank, who is the plaintiff, and to the two ladies who were on the stand. On the other hand, Mrs. Tobler denies that positively. She says she did not make any admission, and asserting that it is not true, and that it had not gone to her benefit, and you are to take into consideration also,—and I think due weight should by given to them—the notes which preceded the note in suit. The notes which preceded it seem to have been a series of notes given by George Tobler and indorsed by his wife, and it has been argued to you—and it is for you to judge of the force of that argument,—whether that was not a loan of money to George Tobler upon the surety of his wife, or the indorsement of his wife, and not a loan of money to her on the credit of her separate estate. As you decide that question from the testimony, conflicting as it is, you decide the question of fact.] [2]

There is, however, in this cause, a question which has occurred to my mind, as trial judge, with which you will have nothing to do. Your duty will be to find the facts one way or

the other, but I reserve for the consideration of the court hereafter the following point: Whether there can be any recovery against Cornelia V. Tobler, a married woman, it not appearing on the face of the note itself that it was given for necessaries or improvements to her separate estate. That need not affect your verdict in any way. [The question of fact is for you. Was this money loaned to Mrs. Tobler on the credit of her separate estate? If it was, you may find a verdict for the plaintiff. If it was not a loan to her on the credit of her separate estate, but a loan to her husband, and she, led by motives of affection or kindness, or whatever motive you like, joined with her husband in making this note, the law throws a shield over her, and over the estate of all married women.] [3]

Defendant's points and answers thereto were as follows:

1. That under the evidence in this case the verdict must be for the defendant, Cornelia V. Tobler. *Answer:* I decline to so charge you. [4]

2. That there is not sufficient evidence in this case to charge the defendant, Cornelia V. Tobler, and therefore the verdict should be for the defendant. *Answer:* I decline that point.

Verdict and judgment for plaintiff for $3,029.91. Cornelia V. Tobler appealed.

*Errors assigned* were (1–5) above instructions, quoting them.

*M. Hampton Todd,* for appellant.—There was no sufficient evidence in the case to justify the submission to the jury of the question whether the debt sued for was contracted by the defendant, Cornelia V. Tobler, on the credit of her separate estate: Real Est. etc. Co. v. Roop, 132 Pa. 496; Act of June 3, 1887, P. L. 332; Healy v. Lord, 10 Mont. Co. Law Rep. 91; Cummings v. Miller, 3 Grant, 146; Patrick & Co. v. Smith, 165 Pa. 526.

There was no consideration to support the note sued on so far as the defendant, Cornelia V. Tobler, is concerned: Paxson v. Nields, 137 Pa. 385.

*A. S. L. Shields,* for appellee. The execution of the note sued on being admitted, the burden of proof was on the defendant to show want of consideration: Milligan v. Phipps, 153 Pa. 208; Harrer v. Croney, 13 Pa. C. C. R. 193.

Since the Act of June 8, 1893, P. L. 334, the only kind of contract for which a married woman cannot be legally bound is that where the obligation is for the accommodation of another: Harrisburg Nat. Bank v. Bradshaw, 178 Pa. 180; Mitchell v. Richmond, 164 Pa. 566; Evans v. Evans, 155 Pa. 577; Gockley v. Miller, 162 Pa. 271; Steffen v. Smith, 159 Pa. 207; Campe v. Horne, 158 Pa. 508.

The determining question in the case was whether the obligation of the defendant, Cornelia V. Tobler, was given for a valuable consideration, and it was immaterial whether the consideration went from the plaintiff's testator directly to her or indirectly through her husband: Spotts' Est., 156 Pa. 281; Bailey v. Phila., 167 Pa. 569; Cunningham v. Garvin, 10 Pa. 366; Landis v. Royer, 59 Pa. 95; Bank v. Bradshaw, 178 Pa. 180.

The testimony discloses that the husband was acting throughout the entire transaction, which culminated in the giving of the note in suit, as the agent of his wife, and she is accordingly liable: Early v. Rolfe, 95 Pa. 60; Stephen & Wife's App., 87 Pa. 202; Voskamp v. Connor, 173 Pa. 109.

OPINION BY MR. JUSTICE GREEN, April 26, 1897:

It is beyond all question that the consideration for which the first of the large notes was given, the one of May 24, 1893, for $2,600, was the several notes of the appellant's husband given at different dates prior to that time. Mrs. Tobler indorsed two of them, but on the others her name did not appear. These four due bills and two notes were aggregated into one new note for $2,600 at four months, dated May 24, 1893. When that fell due two new notes were given, one for $2,348 and the other for $252, dated September 27, 1893, and at their maturity, on January 27, 1894, the note in suit was given for $2,652, the aggregate of the principal and interest of the last two preceding notes. All of these last mentioned notes were signed by George Tobler and Cornelia V. Tobler. No new or fresh consideration of any kind, other than the preceding notes, appeared in the case in any way. On the face of the papers, therefore, the note in suit was signed by Mrs. Tobler as surety for her husband. She was not the maker of any of the original notes which were signed by her husband alone, and she was indorser only, on the

two upon which her name did appear. The present action, it must be borne in mind, is not an action to recover for money loaned. It is an action founded exclusively upon the note of January 27, 1894. It is true the amended statement of the plaintiff's cause of action contains an averment that the note was given to secure a loan of $2,652, which was made by Potts to Mrs. Tobler for the payment of interest, taxes and repairs of her separate real estate, but the action is nevertheless upon the note as the note of the wife. Under the act of 1848 it was repeatedly held that a married woman could not give a valid obligation for money loaned, although the loan was made for the express purpose of enabling her to pay for land, or for the removal of liens, or the payment of repairs or taxes, or for improvement of her separate real estate: Glyde v. Keister, 32 Pa. 85; Brunner's Appeal, 47 Pa. 67; Keiper v. Helfricker, 42 Pa. 325; Schlosser's Appeal, 58 Pa. 493; Sellers v. Heinbaugh, 117 Pa. 218. In Glyde v. Keister the bond was given for necessaries, and we held it was void although she would be liable for the debt if contracted directly by her. In Brunner's Appeal the bond was given for the improvement of her real estate; in Keiper v. Helfricker, for money borrowed for the purchase of land, and in Schlosser's Appeal, for the extinguishment of a lien, but all were held void, because as the law then was, a married woman could not give a valid bond.

In Sellers v. Heinbaugh, decided in 1887, a married woman was bound with sureties for the payment of money borrowed and used for the repair and improvement of her separate real estate. The sureties paid the bond and brought an action against their principal to recover the money paid by them as her sureties, and we held there could be no recovery. All of those decisions proceeded upon the idea that the married woman could not make a valid obligation for any of the several purposes mentioned, and therefore she was not liable. It was the want of the contractual capacity to make such an instrument that relieved her of any obligation. Since the acts of 1887 and 1893 her contractual capacity has been very greatly enlarged, and we have cheerfully held her bound by her contracts to the full extent of her liability under those acts. But the liability set up in the present case is still subject to statutory prohibition. The Act of June 8, 1893, sec. 2 (Purd. Dig. 1299, pl. 24), P. L.

344, which is the source of her present contracting power, also contains a peremptory prohibition in the following words: "But she may not become accommodation indorser, maker, guarantor or surety for another." This species of liability she is still unable to incur, and hence her inability to make such contracts must be adjudged upon the same principles and authorities that were applicable prior to the new legislation. Governed by those principles, and acting upon those authorities, there is no room for any argument or discussion upon the question of her liability. As there was not then, and is not now, any contracting capacity upon which such a liability can be founded, it does not exist. In Patrick v. Smith, 165 Pa. 526, this view was enforced where a very ingenious method of evading the act was devised. But we looked beyond the method, and refused to enforce the liability of indorsement by the wife of a draft in favor of her husband, although she drew the proceeds of the draft from the bank which discounted it by her personal check in favor of her husband, and subsequently gave her own note for the unpaid part of the draft, and again drew the proceeds by her personal check in favor of her husband.

Our Brother DEAN, delivering the opinion said, speaking of the act of 1893, "This act declared a married woman might bind herself by many contracts which theretofore she could not legally make, yet it expressly continued her disability to become an accommodation indorser, guarantor or surety for another. . . . Formerly her capacity to contract was exceptional and her disability general. Now her disability is exceptional and her capacity general. . . . Her liability is not determined alone by the form of the obligation; if the object was to evade the disability created by the statute, the fact, not the form, will determine her liability. . . . The whole transaction was a transparent device adopted by the plaintiff and the husband to evade an express statutory enactment; to create by form a liability where by law none in fact existed." In the present case there was no device of any kind by which to avoid the effect of the statute. The liability sought to be enforced is a direct contract of suretyship, and upon such a contract there is no liability, unless we choose to set aside the positive terms of an express statute, which, as a matter of course, we will not do. The case of the plaintiff is not helped in the least degree by the effort to show that the

debt was contracted for the benefit of the wife's separate estate. Some of the cases already cited were far more meritorious than this in this respect. Nevertheless we held uniformly that there could be no recovery, for the fundamental reason that there was no capacity to make the particular instrument which was sought to be enforced, although there was capacity to incur the kind of indebtedness for which the instrument was given. As this is a proceeding to enforce the payment of an instrument which is in itself a contract of suretyship only, we are obliged to hold that there can be no recovery. The case of Spotts's Est., 156 Pa. 281, has no application. The recovery there was based upon a direct loan of money to the wife for which, of course, she was liable. The assignments of error are all sustained.

Judgment reversed.