## Kemper *v.* Richardson, Appellant.

*Married women — Promissory notes — Accommodation maker—*
*Act of June 8, 1893, P. L. 344.*

The court should look through all disguises and subterfuges and
should open a judgment where the testimony in the case shows a
manifest intention to avoid the provisions of an act of assembly.
A palpable and transparent device to evade the restrictions of the
contractual capacity of a married woman, as limited by the Act of
June 8, 1893, P. L. 344, is void.

*Judgments—Opening of judgments—Discretion of court.*

While it is true that an application to open a judgment is ad-
dressed to the discretion of the court, and that the court must judge
the weight of the evidence, etc.; where the undisputed facts raise a
question to be determined by a jury, it is reversible error not to
open a judgment, and let the defendant in to a defense.

Argued April 23, 1919. Appeal, No. 160, April T.,
1919, by defendant, from judgment of C. P. Butler Coun-
ty, December T., 1916, No. 13, discharging rule to open
judgment in case of Paul R. Kemper for the use of An-
thony Thoma v. Sara Richardson. Before ORLADY, P. J.,
PORTER, HENDERSON, HEAD, TREXLER, WILLIAMS and KEL-
LER, JJ. Reversed.

Rule to open judgment. Before REIBER, P. J.

The facts are stated in the opinion of the Superior
Court.

The court discharged the rule to open the judgment.
Plaintiff appealed.

*Error assigned* was the order of the court.

*W. H. Martin,* for appellant.—The making of the note
by the defendant was a transparent device to evade the
law and the judgment was void: Whyte v. Cramer, 4 Pa.
Superior Ct. 436; Harper v. O'Neil, 194 Pa. 141; Bank
v. Short, 15 Pa. Superior Ct. 64; Harley v. Leonard, 4

Pa. Superior Ct. 431; Henry v. Bigley, 5 Pa. Superior Ct. 503; Patrick & Co. v. Smith, 165 Pa. 526; Sibley v. Robertson, 212 Pa. 24.

It was the duty of the court to open the judgment: Gottlieb v. Middleburg, 23 Pa. Superior Ct. 525; Produce Co. v. Thomas, 28 Pa. Superior Ct. 293; Patrick & Co. v. Smith, 165 Pa. 526; Wiltbank v. Tobler, 181 Pa. 103.

*H. I. Painter,* and with him *Levi M. Wise,* for appellee, cited: Building Association v. Amweg, 22 Pa. Superior Ct. 143; Wilson v. Fitzgerald, 25 Pa. Superior Ct. 633; Oberly v. Oberly, 190 Pa. 341; Brewing Company v. Rago, 240 Pa. 470; Children's Aid Society v. Benford, 26 Pa. Superior Ct. 555; Brewing Company v. Rago, 53 Pa. Superior Ct. 418.

OPINION BY ORLADY, P. J., July 17, 1919:

This case presents circumstances that are so frankly admitted, and so confidently relied on to sustain the action of the court, that it is necessary to restate the undisputed facts and apply to them the reasonable inferences as fixed by our decisions.

The plaintiff is a money broker, and was applied to by W. E. Richardson for a loan of $200. After some negotiations Kemper agreed to loan $200 to Richardson and took his note for that amount signed by Richardson and by his mother, as a surety. Before the money was paid it was discovered that Mrs. Richardson was a married woman. On the hearing of the rule to open the judgment, Kemper testified as follows, viz: " 'Richardson, is your father dead?' He says 'No, he is living'; I says 'There is one thing; if your mother will borrow the money for you all right, but I won't loan it to you.' A few days later, Richardson returned and stated 'his mother would do it and for me to get a new note.' " A note was then prepared for the mother to sign. Kemper, by appointment, went to the Richardson home, some twelve miles distant in the country, and by appointment

met the mother in an open field, away from her home, at an old oil rig, where she signed the note for $200, and gave it to Kemper, who explained "the first note was no good and that she would have to sign a second note by herself, and I would send the money in a few days if everything was all right." After it was delivered to Kemper, he said, "I will take the note to Butler and have it recorded and send the money in a few days," with the remark, "a mother will do anything for a child." For the preliminary investigation of W. E. Richardson's standing, Kemper charged him $25, and when the transaction was concluded he deducted $20 due by the son, for preliminary investigation of the facts, and drew his check for $180, to the order of Mrs. Richardson, put it in an envelope, sealed it, and gave it to W. E. Richardson to deliver to his mother, which was done, and upon her endorsement, the son secured the money on it from the bank. The mother did not receive or expect to receive any part of it.

The sidelights developed by the testimony illuminated the transaction very clearly, that both the principals understood that the real borrower of the money was W. E. Richardson, that Kemper for his own protection suggested the arrangement of having the mother sign the second note. He met the old lady, a woman 76 years of age, on her farm of twenty acres, where her husband had been living with her for over fifty years and had been for ten years "at home lying in bed sick, clear out of his head"; that the mother did not need any money for any purpose of her own, and that the son was acting all the time in his own interest; that Kemper was fully advised of W. E. Richardson's financial standing, and when asked why he charged Richardson $5 (in addition to the original $20), replied "That $5 was paid before this note was signed; this hung fire for about three weeks simply because I couldn't get an attorney; they all knew him and said 'We won't do anything for that fellow unless he pays the money first,' " at least, a jury would be warranted

in finding the above facts under the evidence. Two payments of interest were made on the note, but the manner of payment throws no light on the original arrangement except to confirm the original undertaking as suggested above. All through the transaction the plaintiff was put on inquiry by reason of the special facts of the case, as he knew the parties and their circumstances.

The law will look through all disguises and subterfuges, and will open the judgment where the testimony shows a manifest intention to avoid the provisions of an act of assembly. A jury could fairly find that the device in this case was a transparent attempt to make the mother surety or guarantor for the money her son was borrowing from Kemper. We have nothing to do with the terms of the transaction as between Kemper and the son. The law leaves them to their own method of dealing with each other, but it places a barrier around a married woman to protect her from all kinds of deceit and impositions. The positive declaration of Section 2 of the Act of January 8, 1893, P. L. 344, is, that a married woman may not become accommodation endorser, maker, guarantor or surety for another. The Act of June 3, 1887, P. L. 332, unfettered a married woman to a limited extent only, and did not clothe her with a general power to contract as a feme sole: Real Estate Insurance Co. v. Roop, 132 Pa. 496; Kœchling v. Henkle, 144 Pa. 215. These parties were dealing at short range, and Kemper knew or could easily have known of all the facts as to the financial and domestic conditions of Mrs. Richardson. He did know sufficient facts to advise him that he was furnishing the money upon the importunities of W. E. Richardson to aid him in his personal business, which is one of the very perils from which the law ought to protect a married woman: Real Estate Insurance Co. v. Roop, supra. The law has wisely safeguarded the property of a married woman from such designing practices and has specifically provided the only way by which she is permitted to bind her real estate. The ceremony ob-

served is not material. The law looks beyond the mere form so as to get at the real facts: Goldsleger v. Carracciolo, 63 Pa. Superior Ct. 72. Taking the undisputed facts of this record, a jury would be warranted in finding that the transaction between Kemper and W. E. Richardson was a transparent device adopted by them to evade an express statutory enactment; to create, by form, a liability, where by law none in fact existed: Sibley v. Robertson, 212 Pa. 24. There was no contractual capacity in Mrs. Richardson to bind herself by a note for the payment of the money which Kemper loaned to her son. The evidence taken in connection with the circumstances of the case admits of no other interpretation: Patrick v. Smith, 165 Pa. 526; Wiltbank v. Tobler, 181 Pa. 103; Harper v. O'Neil, 194 Pa. 141.

We cannot agree with the conclusions reached by the learned court below, and under the facts as presented the rule to open the judgment should have been made absolute and the facts under proper instructions submitted to a jury. While it is said in Jenkintown National Bank's Appeal, 124 Pa. 337, and Kaier Co. v. O'Brien, 202 Pa. 153, "It is a mistake to suppose that the court to which an application is made cannot judge of the weight of the evidence and the credibility of witnesses, but in every case where there is a conflict of testimony must send the case to a jury," under the facts and circumstances as exhibited by this record, we feel that the undisputed facts make of it a question to be determined by the jury and not by the court.

The order of the court below is reversed, the record is remitted with a procedendo.