## Goldsleger *v.* Velella, Appellant.

Argued March 9, 1932.

Before Trexler, P. J., Keller, Gawthrop, Cunningham, Baldrige, Stadtfeld and Parker, JJ.

*Vandling D. Rose,* and with him *George W. Ellis* and *John M. Gunster,* for appellant.

*William P. Farrell,* and with him *P. E. Kilcullen,* for appellee.

Opinion by Stadtfeld, J., July 14, 1932:

This is an appeal by Sarah Velella of defendants from the order of the court below, discharging a rule to show cause why the judgment entered against her should not be opened and she be permitted to defend.

The judgment was entered on February 2, 1927, in favor of plaintiff, Golda Goldsleger, against Sarah Velella, appellant, and Antonio Velella, her husband, on a promissory note under seal, purporting to have been executed by both defendants, containing warrant of attorney for confession of judgment, bearing date January 31, 1927, and calling for the payment of $1,000 one month after date.

On August 25, 1930, a petition was presented ex parte Sarah Velella, of defendants, setting forth that the note in question on which judgment was entered was given by the petitioner and her husband to secure plaintiff for a loan in the sum of one thousand dollars

made to her son, Arthur Velella, and for no other purpose; that she had no knowledge concerning the entering of said judgment until August, 1930, when a fi. fa. was issued thereon; that at the time of the execution of said note, she was, and at all times since, has been, a married woman, the wife of the other defendant.

Upon this petition, a rule was granted to show cause why the judgment should not be opened as to her, and she be permitted to defend.

To this petition, an answer was filed by plaintiff, admitting the coverture of Sarah Velella, of defendants, but denying that the note was given by defendants to secure plaintiff for a loan in the sum of one thousand dollars to Arthur Velella, son of Sarah Velella, and averring that the note was given to secure a loan in the sum of one thousand dollars for the express purpose of improving a certain piece of land situate in the Borough of Dunmore, and owned by the said defendants, Antonio Velella and Sarah Velella, his wife.

Pursuant to stipulation on behalf of the parties, depositions were taken in support of, as well as in opposition to, the petition.

On behalf of the petitioner, Arthur Velella, son of the defendants, was called, who testified that he had had some business dealings with the Goldsleger Brothers, sons of plaintiff, for a couple of years prior to the giving of the note in question, and at that time, he was indebted to them in the sum of about $150 for dry goods purchased from them. That about this time, he met Leon Goldsleger on the street, and asked him if he could get him $1,000, to which he replied he could, but that he would have to get a guarantee from his, Arthur's, mother and father, and asked if they could come down to the Goldsleger store. Arthur said it would be impossible for his parents to come there, so

he took the note up for his mother to sign, and she signed it in her own name, as also the name of her husband. That he took the note down to the store, and obtained a check for $1,000 to his own order, and shortly thereafter paid the amount he owed the Goldslegers. He testified that his father and mother never were at the Goldslegers' place, and knew nothing about the loan excepting that his mother knew that he, Arthur, was getting it for his own purpose. That with the money he paid taxes, made a payment on a mortgage against his own property, and paid the bill he owed the Goldslegers.

Sarah Velella, defendant, on her own behalf, testified that she did not know Mrs. Goldsleger, never had met her, or any of them, prior to the taking of the depositions, and had never been in their store, and never had had any conversation with them about the money. That she signed the note at her own home at the request of her son, but that she never received any of the money.

Golda Goldsleger, on her own behalf, testified that on January 31, 1927, she came over to the store, and her sons told her that they had arranged with "the old man Velella and the mother" that she should lend $1,000; that she saw the "old man Velella," and said if they would give her a note for it, she would lend them, otherwise not, and that they told her they "fixed that up." That she gave the money to her, plaintiff's, sons, and they arranged and gave it to them. She claimed all this took place at the store, and that the defendants, Mr. and Mrs. Velella, were there, and that she, plaintiff, was told by her sons that the money was to be used for fixing up defendants' property. Her identification of the defendants was not very satisfactory. She admitted, on cross-examination, that she had said that before she would let them have the money, she would have to have a guarantee, and that she would

take the guarantee from the father and mother "if all three signed."

Abe Goldsleger, son of plaintiff, testified that Arthur Velella, on or about January 31, 1927, said to him that his, Arthur's parents would like to get a loan of $1,000. He, Abe, told Arthur to bring the latter's parents down to the store, and he would see if they, could make some arrangements. That when the parents came down to the store, he spoke to Mr. Velella, and asked him what he wanted the money for, and was told that he wanted to do some repairing and remodeling on the property. That he called his mother down to the store, and told her in the presence of Mr. and Mrs. Velella, the defendants, of the latter's desire to fix up their property, and that he promised Arthur to loan the latter's parents the $1,000 to do the work. He testified that his mother gave him the money, and that he gave it to Antonio Velella, Sarah and Arthur being there at the time. He admitted that Mrs. Velella said nothing during the interview, and he did not know whether she had heard Mr. Velella say he wanted money to fix the property. He admitted that he had made the arrangement for the loan with Arthur. Notwithstanding his testimony on direct examination that he gave the money to Antonio Velella, on cross-examination, he testified he gave it to Arthur Velella, and that he did not give any of it to the mother, Sarah Velella. Notwithstanding the apparently undisputed fact that the mother had signed both her own name and that of her husband to the note, he testified that the latter signed the note at the office when they all came down there.

Leon Goldsleger, a son of plaintiff, testified that all his conversation leading up to the loan was with Arthur, and that all representations were made by the latter. That, a few days prior to January 31, 1927, Arthur asked him whether he could get $1,000 for his parents. He told Arthur the only way towards ar-

ranging the matter was by bringing his parents to the store and discussing it, and that the only way it could be done was to loan the parents $1,000 for their property, and a judgment note be given to protect the plaintiff. That Mr. and Mrs. Velella came to the store, and he understood at the time the money was to be used only for the purpose of making repairs. That the mother of witness gave the money, $1,000 in cash, to his brother, and the latter in turn gave it to the Velellas, Antonio and Sarah. Later, he testified that the money was given to "Mr. Velella."

The depositions exparte plaintiff do not impress us very favorably. The witnesses contradict each other and themselves.

On December 24, 1930, after argument before the court en banc, the motion to open the judgment was denied, and the rule to show cause was discharged. The court, NEWCOMB, P. J., states, "on the face of her (defendant's) testimony, it appears that Arthur was in need of money, and he procured his mother to borrow it for him. He was no doubt a party to the negotiation for the loan, and the beneficiary of it, but certainly was no party to the contract for re-payment. It was his mother who was the active party in making and delivering the note into his hands for the purpose of raising money.. ... ... He tendered the mother's note to plaintiff and thus realized the proceeds, without in any way obligating himself. The mother's contract, therefore, if taken at her word, was one of primary liability."

On February 16, 1931, the defendant appellant presented her petition, and moved to reinstate the original rule to show cause why judgment should not be opened, averring that she had discovered and ascertained for the first time, and subsequent to December 24, 1930, that her son, Arthur Velella, had given to the appellee a judgment note entered at No. 744, May T., 1927, in

the office of the prothonotary of Lackawanna County, in the same amount and on the same day, and upon the same terms as appellants; that the said note was given by the said Arthur Velella to the said Golda Goldsleger, the appellee, as his primary obligation by personally receiving the money therefor from the appellee and retaining the same, and the appellant's note of like date, amount, terms, covenants and stipulations, was given for the sole purpose of securing the appellee in the matter of the payment by Arthur Velella of the note and debt referred to. No answer was filed to this petition, and no rule was granted.

This motion was on April 1, 1931, denied by the court, and this appeal followed. The assignments of error are based on the refusal to open the judgment, the conclusion of law that although the son was the beneficiary of the loan for which plaintiff took the note, it was for the plaintiff to say whether she would loan to the mother and not to the son, and the fact being so found was fatal to the mother's claim of secondary liability, and lastly, the refusal of the court to reinstate the original rule to show cause why the judgment should not be opened.

The Act of June 8, 1893, P. L. 344, Sec. 2 (West's Statutes 1920, Sec. 14570), provides, inter alia, as follows:

"Hereafter a married woman may in the same manner and to the same extent as an unmarried person, make any contract in writing or otherwise......but she may not become accommodation endorser, maker, guarantor, or surety for another......"

The appellate courts of this State have repeatedly held that in determining whether the liability of a married woman on a written instrument or obligation is that of an accommodation endorser, maker, guarantor or surety, the lower court should look through all disguises and subterfuges, and should open a judgment

where the testimony in the case shows a manifest intention to avoid the provisions of the above-quoted statute. It is sufficient to refer to the cases of Pine Brook Bank v. Kearney, 303 Pa. 223; Murray v. McDonald, 236 Pa. 26; Munn, Trustee et al., appellants v. Lorch, 305 Pa. 55, and Kemper v. Richardson, 72 Pa. Superior Ct. 115. The language of our late brother, ORLADY, P. J., in the case last cited is very pertinent to the facts in the instant case:

"The law will look through all disguises and subterfuges, and will open the judgment where the testimony shows a manifest intention to avoid the provisions of an act of assembly. A jury could fairly find that the device in this case was a transparent attempt to make the mother surety or guarantor for the money her son was borrowing from Kemper. We have nothing to do with the terms of the transaction as between Kemper and the son. The law leaves them to their own method of dealing with each other, but it places a barrier around a married woman to protect her from all kinds of deceit and impositions. The positive declaration of Section 2 of the Act of January 8, 1893, P. L. 344, is, that a married woman may not become accommodation endorser, maker, guarantor or surety for another...... These parties were dealing at short range, and Kemper knew or could easily have known all the facts as to the financial and domestic conditions of Mrs. Richardson. He did know sufficient facts to advise him that he was furnishing the money upon the importunities of W. E. Richardson (appellant's son) to aid him in his personal business, which is one of the very perils from which the law ought to protect a married woman: Real Estate Insurance Co. v. Roop, supra, (132 Pa. 496). The law has wisely safeguarded the property of a married woman from such designing practices and has specifically provided the only way by which she is permitted to bind her real estate. The

ceremony observed is not material. The law looks beyond the mere form so as to get at the real facts; Goldsleger v. Carracciolo, 63 Pa. Superior Ct. 72. Taking the undisputed facts of this record, a jury would be warranted in finding that the transaction between Kemper and W. E. Richardson was a transparent device adopted by them to evade an express statutory enactment; to create, by form, a liability, where by law none in fact existed: Sibley v. Robertson, 212 Pa. 24. There was no contractual capacity in Mrs. Richardson to bind herself by a note for the payment of the money which Kemper loaned to her son. The evidence taken in connection with the circumstances of the case admits of no other interpretation........''

Under the uncontradicted facts, that all the negotiations for the loan were conducted by the son, Arthur, that no representations were made by his mother, Sarah Velella, appellant, that the latter received no part of the consideration; that the son received the entire amount of the loan; that one of the conditions of making the loan was that the son should pay the amount of a certain indebtedness of his to the Goldslegers owing at the time, and that part of the loan was actually used for that purpose, as well as the conflicting character of the testimony, warrants the submission of the case to a jury to determine the actual facts.

In view of our conclusion, it is not necessary to discuss the third assignment of error based on the refusal of the court to reinstate the original rule to show cause.

The first and second assignments of error are sustained, the decree of the court dismissing the motion to open the judgment is reversed, and the rule to show cause is made absolute and a procedendo awarded. Appellee to pay costs.