## Gordon, Secretary of Banking, etc., v. Miller et ux.

*Mark T. Milnor* and *Thomas R. Wickersham*, for plaintiff.
*Rhoads & Kelley*, for defendants.

HARGEST, P. J., June 8, 1934.—This matter comes before us upon a petition to open the judgment against Gertrude E. Miller, on the ground that she was an accommodation maker for her husband. The undisputed facts disclosed by the testimony are that, beginning with March 6, 1925, Clarence H. Miller and his wife executed a number of notes that were either purchased or discounted by Security Trust Company. On March 6, 1925, the proceeds of a joint note signed by Clarence H. Miller and Gertrude E. Miller, in the sum of $1,500, were deposited to Mrs. Miller's account. On April 18, 1925, the proceeds of a joint note for $1,000 were also so deposited. These two notes were merged into a $2,500 note, and the money derived from these two notes was loaned to Herman J. Nathan. Subsequently $1,000 was paid on account and a renewal note given June 9, 1925, for $1,500. All these notes contained the following clause: "And I, Gertrude E. Miller, do hereby certify that this note is given for my own personal benefit and for the improvement of my separate estate and that I do not sign as accommodation endorser, maker, guarantor, or surety for any other

person". On March 8, 1927, a new note for $3,500 was given to take up the last-mentioned note and an individual note of Clarence H. Miller for $3,000 upon which his wife was not a party. Subsequently two payments of $500 each were made upon the $3,500 note, leaving a balance of $2,500, which, for convenience, we may hereafter indicate as "note A". On February 17, 1927, Security Trust Company loaned $12,000 on a joint note signed by both husband and wife, and a treasurer's check was given, payable to the order of both and endorsed by both. This money was used to pay off a mortgage on the separate property of C. H. Miller. C. H. Miller paid $500 on account on May 30, 1927, and $3,000 on May 28, 1928, leaving a balance of $8,500. Later the loan was reduced $1,000 by the proceeds of a certificate of deposit in the names of both the Millers, and about the same time, December 8, 1928, a joint payment was made of $2,000, leaving a balance of $5,500, which, for convenience, we will hereafter designate as "note B". On December 6, 1928, C. H. Miller borrowed on his individual note $1,000, which will be hereafter designated as "note C". The aggregate of the items of the notes A, B, and C is $9,000. On March 11, 1931, Gertrude E. Miller executed a mortgage on her property for $5,000, which reduced the amount owing on the note to $4,000. At the same time, a new note was given by Clarence H. Miller and Gertrude E. Miller for $4,000. During all the transactions, Gertrude E. Miller was not personally in the Security Trust Company's place of business. She never had any dealings with Herman J. Nathan. These financial transactions were all conducted by her husband, and the notes were signed by her at home.

The controversy now arises as to what the $5,000 mortgage was intended to cover and what the last $4,000 note was intended to cover. The plaintiff contends that the mortgage replaced note A of $2,500 and the balance of $1,500 was applied to note B, reducing the latter note to $4,000, for which the note of June 8, 1931, was given. The defendants contend that the mortgage covered note A and a $2,500 reduction on note B, leaving $3,000 on note B, and that the $4,000 note took up the $3,000 due on note B and the $1,000 on note C. The testimony as to the application of the money raised by the mortgage of $5,000 and the note of $4,000 is conflicting. Among the obligations covered by note A was a $2,000 note of the husband as to which there seems to be no evidence which would fasten liability upon the wife. Note C was also a note given by the husband alone. The large note of $12,000, dated February 17, 1927, was signed by both husband and wife, the check given to both husband and wife, and the proceeds used to pay a mortgage on the husband's property. $3,500 was paid on account of that note by C. H. Miller himself and $3,000 by both. There may be room for dispute as to whether the trust company was advised that any part of that money was intended to go to the wife's separate estate.

In approaching the question whether or not this matter should be sent to a jury, we recognize that where money is loaned upon a security of the wife, who represents it to be for the benefit of her separate estate, and the proceeds are deposited to her account, there is no duty upon the lender to see that she actually applies the money to her own use: Spotts' Estate, 156 Pa. 281; The Class & Nachod Brewing Co. v. Rago, 240 Pa. 470; New Phila. L. Assn. v. Druian et ux., 101 Pa. Superior Ct. 62.

A woman who borrows money upon her own separate security may pay her husband's debts with it or give him the money for his use in his business: Yeany, to use, v. Shannon, 256 Pa. 135; Scott v. Bedell et ux., 269 Pa. 167.

On the other hand, we must have in mind that the law is intended to protect a married woman against becoming an accommodation party, and where there

is evidence to show clearly that a married woman was an accommodation maker she is entitled to have a judgment opened and the case sent to the jury: Martz and Sullenberger v. McKinley et ux., 96 Pa. Superior Ct. 213; Goldsleger v. Velella, 106 Pa. Superior Ct. 65. If a banking institution loaned money upon a wife's note, knowing that the note was to be used to take up individual notes upon which the loans had previously been made to the husband, the bank could not shield itself behind a certificate or statement of the wife that it was for the use of her separate estate, which it knew to be untrue: Newhall, Assignee, v. Arnett, 279 Pa. 317; Pine Brook Bank v. Kearney, 303 Pa. 223. The transactions which led up to the giving of note A included a merger of other notes, one of which was the individual note of C. H. Miller for $2,000. Note C was the individual note of C. H. Miller for $1,000. If the mortgage of $5,000 was intended to cover and pay note A and note C, the defendants are in no position to have the judgment opened. If, however, the mortgage was not so intended and the $4,000 note was to cover note C and note A in part, the defendant Gertrude E. Miller may have a defense to that note. The testimony leaves this matter in dispute, and under all the circumstances we think the facts should be determined by a jury.

Now, June 8, 1934, the rule granted June 22, 1932, upon the petition of Gertrude E. Miller to show cause why the judgment entered upon the note of $4,000 should not be opened and the said Gertrude E. Miller let into a defense is hereby made absolute.　　　　　　　　　　　　From Homer L. Kreider, Harrisburg, Pa.