Delaney, Appellant, *v.* Nanticoke National Bank.

Argued December 4, 1934. Before FRAZER, C. J., SIMPSON, KEPHART, SCHAFFER, MAXEY, DREW and LINN, JJ.

*James M. Stack,* with him *Evan C. Jones,* for appellant.

*John H. Bigelow,* with him *John J. Hibbard,* for appellee.

PER CURIAM, January 7, 1935:

William L. Delaney and Mary Delaney, his wife, executed and delivered to the Nanticoke National Bank of Nanticoke their joint and several promissory notes in the amounts of $4,500 and $14,500, under dates of July 28, 1930, and August 10, 1930, respectively. Upon default in payment of the notes, the bank sold various shares of stock, including fifty shares of the First National Bank of Nanticoke, owned by the wife as her separate property, which had been deposited as collateral security for the obligations, and it also took over the amount of a savings account standing in the wife's name, in both instances applying the proceeds to part payment of the indebtedness. The wife, who is the present appellant, brought an action of assumpsit to recover the value of her stock plus the amount of her savings account, together with interest from the date of the alleged conversion. Defendant filed an affidavit of defense raising questions of law, upon which, after argument, the court below entered judgment for defendant. Plaintiff appealed.

The pleadings disclose that the wife signed the notes in question as accommodation maker, receiving no part of the consideration, all of which was obtained by the husband and used by him in his separate business. The question for our consideration is, whether the bank was authorized to take the property of the wife to satisfy the obligation of the husband. We are of opinion the court below correctly resolved the issue in defendant's favor, and we accordingly affirm the judgment on the following excerpts from its opinion:

"The debts referred to in the statement of claim were the debts of plaintiff's husband. She was under legal disability to become accommodation maker, endorser or guarantor. The obligations given by her jointly with her husband were given to pay not her debts but his. They represented a liability which she was incapacitated from assuming and the form used in an effort to fix her liability is of no materiality: Real Estate Investment Co. v.

Roop, 132 Pa. 496; Patrick & Co. v. Smith, 165 Pa. 526; Wiltbank v. Tobler, 181 Pa. 103; Sibley v. Robertson, 212 Pa. 24. However, that a married woman may pledge her personal property to secure her husband's debts is undoubted: Kulp v. Brandt, 162 Pa. 222; Herr v. Reinoehl, 209 Pa. 483; Bartholomew v. Allentown National Bank, 260 Pa. 509, and we cannot conclude that plaintiff's power in this respect was affected by the fact that, at the time of pledging her securities, she also became accommodation maker on her husband's notes. She was incapable of assuming such obligation but the doing of what she had authority to do, to wit, pledge her securities, was not affected by the fact that she also attempted to assume an obligation (by signing her name to the notes) which she was incapacitated from assuming.

"As was said in Bartholomew v. Allentown National Bank, supra, at page 512: 'In pledging her securities for her husband's indebtedness, the appellant did what any married woman could have done for the last seventy years. She incurred no liability as accommodation endorser, maker, guarantor or surety and it is only such liability that she is still incapable of incurring. Her pledge of securities to the bank was an executed contract which she was undoubtedly authorized to make.' . . .

"By virtue of the language contained in the $4,500 note, the plaintiff pledged to the bank as security for the payment of any demands against her husband, the securities designated in said note and also any balance of her deposit account. This she was fully authorized to do, and we cannot avoid the conclusion that the pledging of the stock and of the bank balance, as security for payment of the two notes was as full and complete as though each note recited that the stock and bank balance had been pledged as security for its payment.

"Nor is the defendant liable to plaintiff because the bank stock was sold without notice to her, as her pledge to the bank specifically authorized this to be done. The statement contains no averment that in selling the stock

the bank acted fraudulently or in bad faith, and in the absence of bad faith or fraud, no liability would attach because the full value of the stock was not realized. This was a risk which plaintiff assumed."

Judgment affirmed.